EDWARD A. DUFRESNE, JR., Judge Pro Tempore.
This is an appeal by Mervin Kahn Estate, Barney Foreman and Luther Arceneaux, defendants-appellants, from a judgment awarding damages of $3,521, to Craig Prudhomme, plaintiff-appellee, for a trespass committed by the defendants. Because we find neither manifest factual nor legal error in the trial court proceedings, we affirm.
FACTS
The basic issue in this suit is the term of an agricultural lease for an 85 acre crawf *772 ish farm in Acadia Parish. The farm was owned by Mervin Kahn Co., and managed by Barney Foreman. Prior to 1979, 135 acres, including the land in question, was leased by Luther Arceneaux. Sometime in 1978, Arceneaux decided to quit farming and gave up his lease. Foreman verbally released the entire 135 acres to Craig Prud-homme on a yearly basis beginning January 1, 1979. The terms of the lease were that 50 acres would be used for soybeans at a lease price of one-fifth of the crop, and 85 acres would be used for rice at a price of two-fifths of the crop.
Sometime in May, 1980, Prudhomme decided to use the rice acreage for crawfish farming and approached Foreman with a flat rate offer of $25 per acre per year, in lieu of the two-fifths of the rice crop payment. This offer was accepted. Prud-homme understood that this revised lease was also to run from January to December.
Prudhomme prepared the pond and seeded it with crawfish during the remainder of 1980, and fished the pond from January to July of 1981, and again from January to July of 1982. He did not fish from July to December during 1981, and at the time in question he had never fished any other ponds which he leased elsewhere during the second half of the year.
In April of 1982, Prudhomme was informed by Arceneaux that his lease on the 85 acres would not be renewed. There was conflicting testimony as to what was agreed to between these men as to draining the pond. Arceneaux testified that Prud-homme had told him to cut the levees in August. Prudhomme, to the contrary, stated that he told Arceneaux that he would himself drain the pond, but did not intend to do so until December. Sometime in August, 1982, Arceneaux proceeded to cut the levees with a backhoe. Prud-homme arrived at the pond while this work was going forward and asked Arceneaux to stop but these protestations went unheeded.
Prudhomme thereupon filed the present suit seeking general damages for trespass, return of a portion of the rent paid, and additional damages for lost crawfish. Marvin Kahn Estate reconvened for $2,800, for costs of repairs to a well pump, alleging that under the terms of the lease Prud-homme was responsible for maintaining the pump.
After trial on the merits, the court determined that the lease ran from January to December and that a trespass had indeed occurred. She awarded Prudhomme a $521 refund for rent paid, and $3,000, general damages for the trespass and inconvenience caused to the plaintiff in having to remove equipment from the premises prematurely. The reconventional demand was dismissed on the grounds that there was insufficient proof to establish that Prud-homme was responsible for all repairs to the well pump. The defendants now appeal alleging that the trial court erred in fixing the term of the lease from January to December, in awarding unproved general damages, and in dismissing their recon-ventional demand. The plaintiff has answered the appeal urging that damages for the lost crawfish should also have been awarded.
The question of the term of the lease is easily disposed of. Prudhomme testified that he understood the term of the lease for the 85 acres to be from January to December. It was not disputed that this was the term agreed upon in 1979 when the property was originally leased for rice. When Prudhomme quit rice farming it became impossible for him to pay the lease price based on two-fifths of the crop. The only change in the lease during May of 1980, was that the lease price was revised to a flat $25 dollars per acre per year. Prudhomme testified that at that May meeting there was no discussion of the term of the lease, and he therefore assumed that it continued on a January to December basis. Barney Foreman did not appear at trial, and therefore offered no testimony to contradict that of Prud-homme.
Under prior La.Civ.Code, art. 1945, and the present art. 2045, the courts must seek the common intent of the parties in *773 construing contracts. Here, the 1979 lease was on a January to December basis, and the May, 1980 negotiations were essential to determining how the lease price was to be calculated once rice farming was abandoned. Under these circumstances, Prud-homme’s testimony that he intended the lease to continue on a January to December basis is reasonable, and there was no testimony from Foreman to indicate that he had any other intent. On this showing, the trial court properly found that the term of the lease was from January to December, and we so hold.
The next issue is the amount of damages awarded to Prudhomme. Having determined that the lease ran until December, it naturally follows that Prudhomme was entitled to a return of $521, for the rent paid from the time he was evicted until the end of the year. As to the general damages award, an appellate court may raise or lower such an award only after an articulated analysis of the particular facts of the case discloses an abuse of discretion by the trial court, Reck v. Stevens, 373 So.2d 498 (La.1979). The trial judge indicated that the substantial inconvenience suffered by Prudhomme in retrieving some 1200 crawfish traps from the area by hand after the water had been released, rather than by boat, was a significant factor in determining the award. Although the award appears somewhat high to this court, we are unable to articulate reasons why on these particular facts the trial court abused its discretion in fixing the award. We therefore affirm the $3,000 award for general damages.
The third question is whether the lessor proved its reconventional demand for the cost of repairing the pump. Again we agree with the trial court that the lessor failed to make a prima facie showing of this claim. The only evidence presented was a bill for some $2,800, for repairs to the pump. Prudhomme testified that the machine had been damaged by a fire, and also admitted that he was responsible for upkeep of the pump. We, like the trial judge, are unable to find a preponderance of evidence here to establish that an agreement to pay for upkeep of the pump included paying all repair expenses, no matter how substantial and no matter how caused.
The final issue is whether Prud-homme should be compensated for the value of crawfish which he might have caught in the latter part of 1982. The testimony of Prudhomme clearly showed that he had never fished in the fall in this or in any of his other crawfish ponds. Although he stated that he intended to fish during the fall of 1982, he also stated that he had “quit fishing” in July. This latter statement was corroborated by Bill Boudreaux who fished with Prudhomme. It is apparent that the trial court did not believe Prud-homme’s assertion that he intended to fish that fall, and we find no manifest error in that factual determination, Canter v. Koehring Co., 283 So.2d 716 (La.1973). Consequently, he would have harvested no crawfish whether the trespass had occurred or not, and he is thus not entitled to damages for this alleged loss.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.